# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## DUBLIN DIVISION

JAMES ALLIGOOD, individually and on
behalf of all others similarly situated,

                Plaintiffs,

     vs.

TAURUS INTERNATIONAL
MANUFACTURING, INC., a Florida
Corporation; FORJAS TAURUS, S.A.,
a Brazil Corporation; AMMUNITION
ACCESSORIES, INC., a Delaware
Corporation,

                Defendants.

Case No.:  CV306-003

---

# TAURUS INTERNATIONAL MANUFACTURING, INC.'S
# AND FORJAS TAURUS, S.A.'S
# OPPOSITION TO MOTION FOR CLASS CERTIFICATION

<u>**TABLE OF CONTENTS**</u>

<u>**PAGE**</u>

PRELIMINARY STATEMENT ..................................................................1

FACTS ..................................................................................................2

LEGAL ARGUMENT ............................................................................6

    I.        STANDARDS FOR CLASS CERTIFICATION ....................................6

    II.      PLAINTIFF HAS ABANDONED HIS CLAIMS FOR NEGLIGENCE, GROSS NEGLIGENCE, FRAUD, NEGLIGENT MISREPRESENTATION, MALICE AND STRICT PRODUCTS LIABILITY AND, THEREFORE, CLASS CERTIFICATION SHOULD BE DENIED ON THOSE CLAIMS ...........7

    III.     PLAINTIFF FAILS TO SATISFY THE REQUIREMENTS OF RULE 23(a) ........8

          A.    No Numerosity Exists-23(a)(1) ....................................................8

          B.    No Common Issues Exist-23(a)(2) ............................................8

          C.    Plaintiff's Claims Are Not Typical of the Class Claims -23(a)(3) ...............9

          D.    Plaintiff is Not an Adequate Class Representative-23(a)(4).........................10

    IV.    CERTIFICATION OF PLAINTIFF'S PROPOSED RULE 23(b)(3) CLASS SHOULD BE DENIED.................................................................12

          A.    Plaintiff Has Not Satisfied the Predominance Requirement.........................12

          B.    Plaintiff Failed to Address State Law Variations for Implied Warranties of Merchantability That Pose Insuperable Barriers To Class Certification ....................................................................24

          C.    Taurus' Affirmative Defenses Vary According to State ...............................29

          D.    Plaintiff Cannot Use Subgroups to Defeat the Requirements of Rule 23(a) and (b)...................................................................30

          E.    Plaintiff Failed to Address the U.C.C.'s Notice Requirement......................32

          F.    Plaintiff's Proposed Class Does Not Meet the "Superiority" Requirement of Rule 23(b)(3).................................33

V.     PLAINTIFF'S CLASS ALLEGATIONS PURSUANT TO
       RULE 23(b)(2) SHOULD BE DISMISSED ...........................................................37

CONCLUSION...............................................................................................................................39

# TABLE OF AUTHORITIES

**PAGE**

Advisory Committee Notes, 39 F.R.D. 98 (1966) ...........................................................37

Agan v. Katzma & Korr P.A., 222 F.R.D. 692 (S.D. Fla. 2004) .......................................31

Allapattah Services, Inc. v. Exxon Corp., 188 F.R.D. 667 (S.D. Fla. 1999) ....................36

Allison v. Citgo Petroleum Corp., 151 F.3d 402 (5th Cir. 1998) ......................................34, 38

In re America Medical System, Inc., 75 F.3d 1069 (6th Cir. 1996) .................................9, 31, 34

Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231 (1997) ....................6, 12

Andrews v. American Telephone & Telegraph Co.,
  95 F.3d 1014 (11th Cir. 1996) ....................................................................................passim

Barnes v. America Tobacco Co., 161 F.3d 127 (3d Cir. 1998) .........................................9, 39

Betts v. Reliable Collection Agency, 659 F.2d 1000 (9th Cir. 1981)................................31

Blades v. Monsanto Co., 400 F.3d 562 (8th Cir. 2005)....................................................16

In re Bridgestone/Firestone, Inc., 155 F. Supp. 2d 1069 (S.D. Ind. 2001),
  rev'd on other grounds, 288 F.3d 1012 (7th Cir. 2002)..............................................22

In re Bridgestone/Firestone, Inc., 288 F.3d 1012 (7th Cir. 2002) ...................................passim

Briehl v. General Motors Corp., 172 F.3d 623 (8th Cir. 1999) .......................................22

In re Canon Cameras Litigation, 237 F.R.D. 357 (S.D.N.Y. 2006)...................................27

Carlson v. General Motors Corp., 883 F.2d 287 (4th Cir. 1989).....................................22

Carpenter v. BMW of North America, Inc.,
  No. 99-CV-214, 1999 WL 415390 (E.D. Pa. June 21, 1999).......................................27

Castano v. America Tobacco Co., 84 F.3d 734 (5th Cir. 1996) .......................................passim

Chin v. Chrysler Corp., 182 F.R.D. 443 (D.N.J. 1998) ...................................................25

Clark v. Experian Information Solutions, Inc., Nos. 00-1217-24, 00-1218-24 &
  00-1219-24, 2001 WL. 1946329 (D.S.C. Mar. 19, 2001)............................................10

Cole v. General Motors Corp., 484 F.3d 717 (5th Cir. 2007)..........................................passim

Cooper v. Mason, 188 S.E.2d 653 (N.C. Ct. App. 1972) ...................................................26

Cooper v. Pacific Life Insurance Co., 229 F.R.D. 245 (S.D. Ga.2005)............................6, 7

Cooper v. Southern Co., 390 F.3d 695 (11th Cir. 2004) .................................................14

Coryell v. Lombard Lincoln-Mercury Merkur, Inc., 189 Ill. App. 3d 163, 544
    N.E.2d 1154, 136 Ill. Dec. 379 (Ill. App. Ct. 1989) ........................................................15

Domestic Air Transport Antitrust Litigation, 137 F.R.D. 677 (N.D. Ga. 1991) .............................7

Eastern Air Lines, Inc. v. McDonnell Douglas Corp., 532 F.2d 957 (5th Cir. 1976) ......................32

Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974) .......................................................34

Ellison v. Heritage Dodge, 320 S.E.2d 716 (S.C. Ct. App. 1984)............................................35

Feinstein v. Firestone Tire & Rubber Co., 535 F. Supp. 595 (S.D.N.Y. 1982)...................10, 11, 27

Fisher v. Ciba Specialty Chemicals, Corp., 238 F.R.D. 273 (S.D. Ala. 2006)..................................17, 18

Firestone Tire & Rubber Co. v. Cannon, 452 A.2d 192 (Md. App. 1982).......................................32

Ford Motor Co. v. Fairley, 398 So. 2d 216 (Miss. 1991) .................................................26

In re Ford Motor Co. Ignition Switch Products Liability Litigation,
    194 F.R.D. 484 (D.N.J. 2000).........................................................................24

In re General Motors Corp. Dex-Cool Products Liability Litigation,
    241 F.R.D. 305 (S.D. Ill. 2007) ......................................................................17, 19

General Telegraph Co. v. Falcon, 457 U.S. 147, 102 S. Ct. 2364,
    72 L. Ed. 2d 740 (1982)..............................................................................6

Gilchrist v. Bolger, 733 F.2d 1551 (11th Cir. 1984) .......................................................7

Hagenbuch v. Snap-On Tools Corp., 339 F. Supp. 676 (D.N.H. 1972) ...........................................15

Hammet v. America Bankers Insurance Co. of Fla., 203 F.R.D. 690 (S.D. Fla. 2001)....................38

Hansberry v. Lee , 311 U.S. 32, 61 S. Ct. 115, 85 L. Ed. 22 (1940) ................................................10

Heffner v. Blue Cross and Blue Shield of Ala., Inc., 443 F.3d 1330 (11th Cir. 2006) ....................7

Hendricks v. Callahan, 972 F.2d 190 (8th Cir. 1992)........................................................15

iv

Hinton v. Monsanto Co., 813 So. 2d 827 (Ala. 2001) ......................................................22

Interco Inc. v. Randustrial Corp., 533 S.W.2d 257 (Mo. Ct. App. 1976)..........................15

J.B. v. Valdez, 186 F.3d 1280 (10th Cir. 1999).................................................................7

Jarman v. United Industrial Corp., 98 F. Supp. 2d 757 (S.D. Miss. 2000)........................22

Johnson v. America Credit Co. of Georgia, 581 F.2d 526 (5th Cir. 1978).........................31

Jones v. Roy, 202 F.R.D. 658 (M.D. Ala. 2001) ...............................................................31

Klay v. Humana, Inc., 382 F.3d 1241 (11th Cir. 2004).............................................passim

Kleiner v. First National Bank of Atlanta, 97 F.R.D. 683 (N.D. Ga. 1983)........................36

Lemon v. International Union of Operating Eng'rs, 216 F.3d 577 (7th Cir. 2000) ..............39

London v. Wal-Mart Stores, 340 F.3d 1246 (11th Cir. 2003) ...........................................30

Lyon v. Caterpillar, Inc., 194 F.R.D. 206 (E.D. Pa. 2000) ...............................................28

Martin v. American Medical Systems, Inc., IP 94-2067-C-H/G, 1995 WL 680630
  (S.D. Ind. Oct. 25, 1995)..........................................................................................23, 24

McBride v. Galaxy Carpet Mills, Inc., 920 F. Supp. 1278 (N.D. Ga. 1995)....................13

McElhaney v. Eli Lilly & Co., 93 F.R.D. 875 (D.S.D. 1982) ...........................................24

Murray v. Auslander, 244 F.3d 807 (11th Cir. 2001) ...................................................21, 38

Norwood v. Raytheon Co., 237 F.R.D. 581 (W.D. Tex. 2006) ......................................29, 30

Overstreet v. Norden Laboratoriess, Inc., 669 F.2d 1286 (6th Cir. 1982)........................15

Palmer v. A.H. Robins Co., 684 P.2d 197 (Colo. 1984)..................................................32

Parker v. Bell Ford, Inc., 425 So. 2d 1101 (Ala. 1983) ..................................................32

Pearl v. Allied Corp., 102 F.R.D. 921 (E.D. Pa. 1984) ..................................................10

Penson v. Terminal Transport Co., Inc., 634 F.2d 989 (5th Cir. 1981)............................37

Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985) ...................................................34

Price v. Cannon Mills, 113 F.R.D. 66 (M.D.N.C. 1986)..................................................8

In re Propulsid Products Liability Litigation, 208 F.R.D. 133 (E.D. La. 2002) ...............................34

Rhodes v. Cracker Barrel Old Country Store, Inc., 213 F.R.D. 619 (N.D. Ga. 2003) .....................7

Robinson v. Texas Auto Dealers Assoc., 387 F.3d 416, 426 (5th Cir. 2004) ...................................33

Royal Bus. Machines, Inc. v. Lorraine Corp., 633 F.2d 34 (7th Cir. 1980) ......................................15

Schein v. Stromboe, D.D.S., 102 S.W.3d 675 (Tex. 2002) ..............................................................35

Sessa v. Riegle , 427 F. Supp. 760 (E.D. Pa. 1977), aff'd, 568 F.2d 770 (3d Cir. 1978)..................15

Sikes v. Teleline , 281 F.3d 1350 (11th Cir. 2002)........................................................12, 16, 17

Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 482 F.2d 880 (5th Cir. 1973) ....................9

Singer v. America Telephone & Telegraph Corp., 185 F.R.D. 681 (S.D. Fla. 1998) ......................36, 37

Speed Fastners, Inc., v. Newsom, 382 F.2d 395 (10th Cir. 1967)......................................................15

Spence v. Glock , 227 F.3d 208 (5th Cir. 2000) ......................................................................13, 34

Southwestern Refining Co. v. Bernal, 22 S.W.3d 425 (Tex. 2000)...................................................34

Szabo v. Bridgeport Machines, Inc., 249 F.3d 672 (7th Cir. 2001)...................................................35

Thompson v. America Tobacco Co., 189 F.R.D. 544 (D. Minn. 1999) ...........................................10, 11

Tylka v. Gerber Products, Co, 178 F.R.D. 493 (N.D. Ill. 1998)........................................................27

Unger v.  Amedisys, Inc., 401 F.3d 316 (5th Cir. 2005) ....................................................................6

In re Universal Serv. Fund Telegraph Billing Practices Litigation,
 219 F.R.D. 661 (D. Kan. 2004)........................................................................................................11

Villalon v. Vollmering, 676 S.W.2d 220 (Tex. App. 1984) ..............................................................15

Walsh v. Ford Motor Co., 130 F.R.D. 260 (D.D.C. 1990) ...............................................................25, 35

Walsh v. Ford Motor Co., 807 F.2d 1000 (D.C. Cir. 1986)..............................................................19, 20

Weaver v. Chrysler Corp., 172 F.R.D. 96 (S.D.N.Y. 1997)..............................................................22

Winston Industrial, Inc. v. Stuyvesant Insurance Co.,
 55 Ala. App. 525, 317 So. 2d 493 (Ala. Civ. App. 1975)................................................................15

Young & Cooper, Inc. v. Vestring, 214 Kan. 311, 521 P.2d 281 (Kan. 1974)..................................15

Zehel-Miller v. Astrazenaca Pharms., LP, 223 F.R.D. 659 (M.D. Fla. 2004)................................37, 38

## STATUTES

15 U.S.C. §§ 2301-12 (1982)................................................................................................20

15 U.S.C. § 2304 ................................................................................................................2

15 U.S.C. § 2301 - 2312 ....................................................................................................4

Fed. R. Civ. P. 23, 23(b)(2) ...............................................................................................37

Fed. R. Civ. P. 23(a) .....................................................................................................passim

S.C. Code Ann. § 36-2-725(1) ...........................................................................................30

U.C.C. § 2-313 ............................................................................................................15, 18, 19

U.C.C. § 2-314 ............................................................................................................26, 27

U.C.C. § 2-607(3) ..............................................................................................................32

U.C.C. § 2-607(3)(2)..........................................................................................................32

## OTHER AUTHORITIES

3 J. McDonnel and Coleman Commercial and Consumer Warranties §24.01[1] at 24-3 (1987)……………………………………………………………………………………..25

John S. Kiernan, et al., Developments in Consumer Fraud Class Action Law, PLI/PAT 237, 277 (1998)……………………………………………………………………………..28

Newberg on Class Actions § 3:9 (4th ed. 2006)………………………………………... 8

Newberg on Class Actions § 7.26 (3d ed. 1992)………………………………………...7

Note, Antidiscrimination Class Actions Under the Federal Rules of Civil Procedure: The Transformation of Rule 23(B)(2), 88 Yale L.J. 868, 873 (1979)…………………………….37

## <u>PRELIMINARY STATEMENT</u>

Plaintiff seeks to certify a putative nationwide class action on behalf of "all persons or entities that own or hereafter acquire a Taurus[1] .17 caliber HMR pump action rifle" and a nationwide subclass consisting of "all persons or entities that are members of the…class who own or hereafter acquire CCI/Speer TNT .17 caliber HMR hollow point cartridges" pursuant to Federal Rules of Civil Procedure ("FRCP" or "Rule") 23(b)(2) and (b)(3).  (Brief in Support of Motion for Class Certification ("Pl. Br."), p. 1.  Plaintiff initially asserted claims against Taurus for negligence, gross negligence, malice, fraud, negligent misrepresentation, strict products liability, as well as, breach of express and implied warranty.  Notably, Plaintiff's recent submission to the Court is more selective, limiting its analysis to the warranty claims and to the alternative of consumer fraud.

Plaintiff only seeks from the Court a proposed class consisting of putative members that claim breaches of the express warranty and implied warranty of merchantability allegedly provided by Taurus, and alternatively, subclasses seeking relief for alleged violations of states consumer protection laws.   However, narrowing the claims does not simplify Plaintiff's burden on his motion for class certification because Plaintiff still fails to satisfy the most basic of standards for certification pursuant to Rule 23(b)(3), namely that of demonstrating predominance.   The Eleventh Circuit and other jurisdictions recognize that to certify a nationwide class, a claimant must extensively analyze the applicable state laws and their variations.  Plaintiff seeks the opposite: a nationwide class based on a generalized interpretation of warranty law based on the U.C.C. without analysis of the numerous variations under the

---

[1] Plaintiff treats the Taurus defendants as one entity, which they are not.  Forjas Taurus, S.A. ("Forjas Taurus") is a Brazilian corporation that sells goods to a Florida corporation,  Taurus International Manufacturing, Inc. ("TIMI").    TIMI sells those goods in North America as dictated by the Gun Control Act of 1968 ("GICA").

applicable state laws.  Plaintiff asks this Court to divide the class into no less than twenty subclasses based on the state variations for the elements of claims for breach of express warranty and implied warranty of merchantability.  Such a proposal is done in an unsuccessful attempt to circumvent Plaintiff's obligation to address the differences in state law, demonstrates the inferiority of the class action while as litigation tool in this matter, and create an unmanageable group of plaintiffs.  Plaintiff's case does not fit the mold of a class action and will certainly result in procedural chaos.

## FACTS

On behalf of himself and all others similarly situated in the United States, James Alligood ("Plaintiff" or "Alligood"), a Georgia resident, brought suit against Forjas Taurus, S.A., Taurus International Manufacturing, Inc. ("Taurus") and Ammunition Accessories, Inc. ("AAI") (collectively "Defendants") for damages related to alleged product defects of the Model 172 .17 caliber pump action rifle manufactured by Taurus (the "Taurus Rifle") and the .17 caliber cartridge manufactured by AAI (the "AAI Cartridge").

In his original complaint (the "Complaint"), Plaintiff asserted the following causes of action against the Defendants: (i) Negligence (Taurus and AAI); (ii) Gross Negligence (Taurus); (iii) Breach of express and implied warranties of fitness (Taurus and AAI); (iv) Breach of implied warranty of merchantability (Taurus and AAI); (v) Malice (Taurus); (vi) Fraud (Taurus); (vii) Negligent Misrepresentation (Taurus); and (viii) Strict products liability (Taurus and AAI). Pending before the Court is Plaintiff's motion to amend the Complaint to add a claim against Defendants for breach of 15 U.S.C. § 2304 (the Magnuson-Moss Act) for putative class members in nine states divided into two subclasses.  Filed simultaneously herewith is Taurus' opposition to the motion to amend/motion to dismiss the proposed amendment to the Complaint for failure

to state a claim upon which relief can be granted.  Plaintiff's motion for class certification only seeks certification pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) for breach of express and implied warranties, and alternatively, consumer fraud.  Plaintiff abandoned his other claims (the "non-warranty claims") by not moving to certify those claims.

### Evidence that the Taurus Rifle was Defectively Designed

Plaintiff bases his class action lawsuit on a *de minimis* number of incidents involving the Taurus Rifle and the AAI Cartridge.  The incident and return records Plaintiff relies upon do not support the conclusion that all Taurus Rifles are susceptible to misfires, cartridge case failure and cartridge case blowouts, or are defective.  Since inception, 13,518 Taurus Rifles have been distributed in at least thirty-seven states.  Pl. Br., p. 10.   Less than 1% of the total number of Taurus Rifles distributed have been involved in such incidents.  Id. at p. 4.

Plaintiff offers no expert evidence that Taurus knowingly introduced an unsafe product into the market.  Rather, Plaintiff's statement that Taurus had knowledge of the alleged design defects is based on a purported "expert analysis" provided by an AAI employee.  Specifically, the document Plaintiff relies upon provides only a speculative opinion by one individual about one Taurus Rifle.  Plaintiff makes no reference about all the Taurus Rifles in the proposed class.

### Identification of Putative Class Members by Plaintiff

Plaintiff's assertion that Taurus failed to produce the names and addresses of all class members who purchased or currently own the Taurus Rifle is misleading.   It is Plaintiff's burden to identify all putative class members for class notice purposes.  Moreover, Taurus does not have the names of all potential class members.  Forjas Taurus has no information about sales in the United States, save for those to its importer, TIMI.  In turn, TIMI maintains its records in compliance with the GCA.  These record are not, strictly speaking, TIMI property but belong to

the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE") with TIMI serving as custodian until TIMI ceases business operations. Then the records must be turned over to BATFE to be archived. Further, these records, as dictated by law, do not contain information beyond that which is required in the format demanded by the GCA. The records do not contain any information concerning anyone owning or possessing TIMI products except the Federal Firearms Licensee that purchases from one of TIMI distributors. In addition, these records are not subject to production by a request to any entity other than BATFE. The information produced by TIMI that is reflective of where and when Taurus Rifle sales occurred comes from a similar but not congruent set of records of TIMI sales, again to distributors. TIMI has no information concerning sale from distributors to retailers, from retailers to consumers, or between consumers, where such sales are permitted.

**Listing of Subgroups/Subclasses**

Plaintiff's motion for class certification proposes the establishment of at least twenty subgroups within the Taurus class (and duplicate subgroups in the AAI subclass) as set forth below:

- A subgroup of all members of the classes residing in Georgia with claims for breach of express warranty;

- A subgroup of all members of the classes residing in Louisiana with claims for breach of express warranty;

- A subgroup of all members of the classes with claims for breach of express warranty residing in the eighteen jurisdictions requiring reliance;

- A subgroup of all members of the classes with claims for breach of express warranty residing in the twenty-one jurisdictions requiring no privity or reliance;

- A subgroup of all class members residing in the six jurisdictions requiring privity but not reliance, based on a breach of express warranty and the privity exclusion rule under Magnuson-Moss, 15 U.S.C. § 2301 – 2312;

- A subgroup of all class members residing in the three jurisdictions requiring privity and reliance, based on a breach of express warranty and the privity exclusion rule under Magnuson-Moss, 15 U.S.C. § 2301 – 2312;

- A subgroup of all members of the classes residing in Arizona under strict liability;

- A subgroup of all members of the classes residing in Kentucky under negligent misrepresentation;

- A subgroup of all members of the classes residing in Ohio under strict liability.

- A subgroup of all members of the classes residing in Wisconsin with a claim of breach of express warranty under a unilateral contract;

- A subgroup of all members of the classes residing in North Dakota with a claim for breach of express warranty to determine whether privity or reliance are required.

- A subgroup of all members of the classes residing in Georgia without a privity requirement where only economic damages are involved, based on the implied warranty of merchantability;

- A subgroup of all members of the classes residing in Louisiana without a privity requirement where only economic damages are involved, based on the implied warranty of merchantability;

- A subgroup of all members of the classes residing in the thirty-seven jurisdictions without a privity requirement where only economic damages are involved, based on the implied warranty of merchantability;

- A subgroup of all members of the classes residing in the three jurisdictions where a privity requirement still exists but have "suggested that they might abandon the privity requirement in implied warranty claims involving economic losses if presented with an appropriate case";

- A subgroup of all members of the classes residing in Kentucky with a privity exception, under negligent misrepresentation;

- A subgroup of all members of the classes residing in Ohio with a privity exception, under strict liability; and

- A subgroup of all members of the classes residing in Oregon with a privity exception where "the defect makes the product dangerous to human safety" under strict liability; or alternatively

- A subgroup of all members of the classes residing in the ten states not requiring scienter based on common consumer protection laws; and

- A subgroup of all members of the classes residing in the two states requiring scienter based on common consumer protection laws.

## LEGAL ARGUMENT

## I.   STANDARDS FOR CLASS CERTIFICATION

Failure to establish any one of the four factors set forth in Rule 23(a) and at least one of the alternative requirements of Rule 23(b) precludes class certification. See generally, Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615-18, 117 S. Ct. 2231, 2246-48 (1997).  To satisfy Rule 23(a), plaintiff must establish that (1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to protect the interests of the class adequately and fairly. FED. R. CIV. P. 23(a).  As explained herein, Plaintiff fails to satisfy the requirements of Rule 23(a) and, as discussed in Points IV and V *infra*, fails to satisfy the requirements of Rules 23(b)(2) and (3).

Contrary to Plaintiff's assertion, there is no presumption in favor of class certification. Such a presumption is inconsistent with the rigorous analysis that a district court must conduct in reviewing a motion for class certification.  Cooper v. Pacific Life Ins. Co., 229 F.R.D. 245, 256 (S.D. Ga. 2005).  In fact, "[t]he class-action device was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  Gen. Tel. Co. v. Falcon, 457 U.S. 147, 155, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) (internal quotations omitted); see also FED. R. CIV. P. 23 Advisory Committee Notes, (2003 Amendments) ("A court that is not satisfied that the Rule 23 requirements have not been met should refuse certification until they have been met.") (emphasis added); Klay v. Humana, Inc., 382 F.3d 1241, 1251 (11th Cir. 2004) (explaining that the district court's power to certify a class

must be exercised within the framework of Rule 23);  Gilchrist v. Bolger, 733 F.2d 1551, 1556 (11th Cir. 1984).

Under this "rigorous analysis" the district court cannot unblinkingly accept Plaintiff's evidence and argument.  See, e.g., Rhodes v. Cracker Barrel Old Country Store, Inc., 213 F.R.D. 619, 671 (N.D. Ga. 2003); J.B. v. Valdez, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999) (quoting 2 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 7.26 (3d ed. 1992) (district courts "need not blindly rely on conclusory allegations which parrot Rule 23 [and] may … consider the legal and factual issues presented by plaintiff's complaints."); see also Falcon, 457 U.S. at 160.  Accordingly, "it is appropriate to consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied."  Heffner v. Blue Cross and Blue Shield of Ala., Inc., 443 F.3d 1330, 1337 (11th Cir. 2006); see also Domestic Air Transp. Antitrust Litig., 137 F.R.D. 677, 684 (N.D. Ga. 1991) (holding that the Court will "scrutinize the evidence plaintiffs propose to use in proving their claims without unnecessarily reaching the merits of the underlying claims").

## II.   PLAINTIFF HAS ABANDONED HIS CLAIMS FOR NEGLIGENCE, GROSS NEGLIGENCE, FRAUD, NEGLIGENT MISREPRESENTATION, MALICE AND STRICT PRODUCTS LIABILITY AND, THEREFORE, CLASS CERTIFICATION SHOULD BE DENIED ON THOSE CLAIMS

Plaintiff only seeks certification for Taurus' alleged breach of express and implied warranties and alternatively, certification of a consumer fraud class.  Pl. Br., p. 1. Interestingly, when Plaintiff opposed Defendants' joint motion to dismiss, Plaintiff pleaded for "an opportunity to provide to this Court, as a part of his Motion for Class Certification, an extensive analysis of the choice of laws involved surveying the nuances and variations of the potential negligence, gross negligence, strict liability and other product liability state law claims and a study of how those variations would not affect commonality, predominance or manageability."   Response to

Defendants' Joint Motion to Dismiss ("Pl. Mot. To Dismiss Response"), p. 16 [Docket No. 15]. This clearly demonstrates that Plaintiff knew of his obligations and made a conscious decision to abandon those claims.  This fact alone warrants denial of certification of Plaintiff's non-warranty claims.  Price v. Cannon Mills, 113 F.R.D. 66, 72 (M.D.N.C. 1986) (denying class certification for claims plaintiff abandoned by not addressing in findings of fact or conclusions of law).

## III.    PLAINTIFF FAILS TO SATISFY THE REQUIREMENTS OF RULE 23(a)

### A.    No Numerosity Exists-23(a)(1)

Rule 23(a)(1) requires that a class may be certified only if "the class is so numerous that joinder of all members would be impracticable."  FED. R. CIV. P. 23(a)(1).  Because each proposed subclass bears the burden of establishing the Rule 23(a) and Rule 23(b) requirements, subclassing frequently encounters the difficulty of satisfying the numerosity requirement, since only a relatively few class members may possess the designated subclass characteristics.  1 NEWBERG ON CLASS ACTIONS § 3:9 (4th ed. 2006).  This problem is particularly conspicuous in the present case, where Plaintiff proposes approximately twenty subclasses, some consisting of only a single state of potential plaintiffs.  The records relied on by Plaintiff reveal that less than one-percent (1%) of Taurus Rifle owners have reported any complaints that could be interpreted as potentially involving the same claims that are at issue in this case.  Even if every single Taurus Rifle owner could be considered a plaintiff, at least some of the proposed subclasses would fail for lack of numerosity.

### B.    No Common Issues Exist-23(a)(2)

"No class action is proper unless all litigants are governed by the same legal rules. Otherwise, the class cannot satisfy the commonality and superiority requirements of FED. R. CIV. P. 23(a) and (b)(3)."  In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1015 (7th Cir. 2002).

Plaintiff acknowledges that "commonality" requires at least one common issue of fact or law. Pl. Br., p. 14; see also Barnes v. Am. Tobacco Co., 161 F.3d 1276, 140 (3d Cir. 1998); In re Am. Med. Sys., Inc., 75 F.3d 1069, 1080-81 (6th Cir. 1996).  None of Plaintiff's issues are "common" because, as discussed in Point IV herein, the laws of numerous jurisdictions must be applied to each issue in order to resolve the issue for all class members.  Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 482 F.2d 880, 882-83 (5th Cir. 1973).

Commonality also fails to exist because each individual class member would have to proceed on an individual basis to decide numerous factual issues, including but not limited to, reliance, privity, the purchase price for the rifle and ammunition (and documenting proof of such purchase), whether notice has been provided, whether they saw or read warning labels and how extensively they have used the Taurus Rifle.

**C.**      **Plaintiff's Claims Are Not Typical of the Class Claims -23(a)(3)**

Rule 23(a)(3) provides that the lead plaintiff's claims and defenses must be typical of the claims and defenses. See FED. R. CIV. P. 23(a)(3).  As Plaintiff notes, "typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of the class whom they purport to represent."  Pl. Br., p. 17.  Plaintiff argues that his claims for breach of express and implied warranties "are precisely the exact same claims members of the putative class and subclass would reasonably be expected to raise…"  Id. at p. 18.  However, Plaintiff has explicitly abandoned his claims for negligence, gross negligence, fraud, negligent misrepresentation, malice and strict products liability (collectively, "non-warranty claims") by failing to assert the same in the motion for class certification.  The non-warranty claims are claims that a putative class member might reasonably be expected to raise.  By abandoning them,

Plaintiff is refusing to seek relief under the same legal theories as putative class members. Accordingly, typicality is not satisfied.

**D.**      **Plaintiff is Not An Adequate Class Representative-23(a)(4)**

The self-serving sacrifice by a putative class representative of the rights of absent class members implicates due process considerations, Hansberry v. Lee, 311 U.S. 32, 45, 61 S.Ct. 115, 119-20, 85 L.Ed. 22 (1940), and the Rule 23(a)(4) requirement of "adequate representation." Inadequate representation infringes upon the due process rights of absentee class members who are bound by the final judgment of the suit by the doctrine of *res judicata*. See Hansberry, 311 U.S. at 42-43.  In Feinstein v. Firestone Tire & Rubber Co., 535 F. Supp. 595 (S.D.N.Y. 1982), the named plaintiffs in a class action sued only for economic losses under the Uniform Commercial Code ("U.C.C."), arguing that class members could pursue their personal injury claims individually in other courts.  The court denied class certification after finding that the class representatives who "tailored the class claims in an effort to improve the possibility of demonstrating commonality" obtained this "essentially cosmetic" benefit "at the price of presenting putative class members with significant risks of being told later that they had impermissibly split a single cause of action."  Id. at 606; see also, e.g., Clark v. Experian Info. Solutions, Inc., Nos. 00-1217-24, 00-1218-24 & 00-1219-24, 2001 WL 1946329, at *1-6 (D.S.C. Mar. 19, 2001)[2]; Thompson v. Am. Tobacco Co., 189 F.R.D. 544 (D. Minn. 1999); Pearl v. Allied Corp., 102 F.R.D. 921 (E.D. Pa. 1984); Feinstein, 535 F. Supp. at 606-07.  In particular, inadequacy is more likely to be found where, "the class representatives were pursuing relatively insignificant claims while jeopardizing the ability of class members to pursue far more

---

[2] Copies of all unpublished opinions are attached hereto as Exhibit A.

substantial, meaningful claims."  <u>In re Universal Serv. Fund Tel. Billing Practices Litig.</u>, 219

F.R.D. 661, 669 (D. Kan. 2004).

      The primary class relief sought by Plaintiff consists of the "loss of value of [the plaintiff

class's] rifles and future use of their rifles," which allegedly amounts to approximately $300.00

for each plaintiff.  Complaint, ¶ 13.1.  Notably, this relief is limited to the economic loss of the

value of the Defendants' products.  Plaintiff also presents statutory claims based upon the U.C.C.

and state consumer protection laws.  Although Plaintiff brings individual claims to recover for

his own "past, present and future medical expenses" and "past, present and future pain, suffering

and mental suffering" from his injuries as a result of the allegedly wrongful conduct of

Defendants, he excludes all class-wide personal injury claims from the Complaint.  Of equal, if

not greater, importance is that Alligood is not seeking class certification, and thus has abandoned

six of the eight counts in his Complaint (negligence, gross negligence, malice, fraud, negligent

misrepresentation).  Complaint, ¶ 13.5.

      In limiting the damages which can be sought, and the legal theories for recovery, as it

pertains to the potential class, he substantially prejudices the remaining class members' rights to

seek alternative grounds of relief in a subsequent case and calls into question whether he can, in

fact, ensure vigorous advocacy of the interests of the putative class members.  For example, he

places class members with present physical injuries allegedly related to the defendants' products

at risk of learning later that their potentially more valuable personal injury claims are barred by

*res judicata*.  In short, Plaintiff has disregarded the interests of the class members by excluding

all personal injury claims and abandoning six of his eight counts in the motion for class

certification.  This decision is self-serving and advances his own interests to the detriment of

absent class members.  The prejudicial effect of Plaintiff's claim splitting "is simply too great for

the Court to conclude that the named plaintiffs' interests are aligned with those of the class."

Thompson, 189 F.R.D. at 551.  Because Alligood fails to satisfy Rule 23(a)(4), his motion for class certification should be denied.

## IV.  CERTIFICATION OF PLAINTIFF'S PROPOSED RULE 23(b)(3) CLASS SHOULD BE DENIED

Plaintiff seeks class certification pursuant to Rule 23(b)(3) for breach of express and implied warranties.  Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and "that a class action is superior to other available methods" of adjudicating the controversy.  Id.

### A.  Plaintiff Has Not Satisfied The Predominance Requirement

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem,  521 U.S. at 594.  The rationale underlying the predominance requirement is that "[i]t is only where this predominance exists that economies can be achieved by means of the class-action device."  FED. R. CIV. P. 23(b)(3), Advisory Notes to 1966 Amendment.

The predominance inquiry requires the Court to consider more than just the defendant's conduct.  It must consider whether the case as a whole may be litigated in the aggregate, including the claims of individual class members and the defendant's affirmative defenses.  See, e.g., Sikes v. Teleline, 281 F.3d 1350, 1354 (11th Cir. 2002); Andrews v. Am. Tel. & Tel. Co., 95 F.3d 1014, 1025 (11th Cir. 1996). No class action is proper unless all the litigants are governed by the same legal rules, since otherwise the class cannot satisfy the commonality and superiority requirements.  In re Bridgestone/Firestone, Inc., 288 F.3d 1012.

Inherent in a predominance inquiry is a determination of which states' substantive laws will apply to the claims.  Plaintiff previously conceded that "Georgia courts apply the choice of

law rule of *lex loci delictis* in tort actions." Pl. Mot. To Dismiss Response, p. 15.[3]   Pursuant to

this standard, "tort cases are generally governed by the substantive law of the place where the

tort or wrong occurred." Id.  Indeed, Plaintiff recognizes therefore, that the state laws of at least

thirty-seven states will apply to the purported class members. Id. at p. 10.  Taurus has previously

stipulated that the Taurus Rifle was distributed in all fifty states. See Response in Opposition to

Motion to Compel Answer to Class Discovery, p. 2 [Docket No. 72].   Accordingly, it is

undisputed that the substantive laws of the fifty states may apply to Plaintiff's warranty claims.

       The Court must determine for each issue raised by the complaint, whether the laws for

the interested jurisdictions vary and, if so, whether those variations can be managed. Spence v.

Glock, 227 F. 3d 208, 312 n.6 (5th Cir. 2000).  As Plaintiff acknowledges, a plaintiff cannot

meet Rule 23(b)(3)'s predominance requirement when he brings state law claims - - which must

be decided on the basis of the law of multiple states - - because legal issues no longer pose a

common question. Pl. Br., p. 28.  Indeed, Plaintiff states it is true that, in a multi-state class

action, variations in state law may swamp any common issues and defeat predominance

especially when there are "a large number of different legal standards governing a particular

claim."); see also Andrews, 95 F.3d at 1024; McBride v. Galaxy Carpet Mills, Inc., 920 F. Supp.

1278 (N.D. Ga. 1995).  The party seeking certification of a nationwide class must therefore

"provide an 'extensive analysis' of state law variations to reveal whether these pose 'insuperable

obstacles.'"  Klay, 382 F.3d at 1262 (citation omitted) ("To certify a multi-state class action, a

plaintiff must prove through 'extensive analysis' that there are no material violations among the

law of the states for which certification is sought.").

---

[3] Plaintiff's statement that "it is unclear whether or not members of the purported class reside in
all fifty-one states and/or the District of Columbia … [T]herefore, any attempt to identify with
certainty the state warranty statutes that are applicable in this action is premature" is of no avail.
Pl. Br., pp. 30-31.

A district court must then "consider how these variations affect predominance." Cole v. Gen. Motors Corp., 484 F.3d 717, 724 (5th Cir. 2007) (citing Castano v. Am. Tobacco Co., 84 F.3d 734, 740 (5th Cir. 1996)).  Although similar, Rule 23(b) is "far more demanding" than the threshold Rule 23(a)(2) commonality requirement.  Id. at 623-24.  To the extent that the resolution of an issue depends on facts specific to each class member, the issue is an individual and not a common question.  "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)."  Thus, Rule 23(b)(3) is not an appropriate basis for class certification when plaintiffs' claims will turn on resolution of individual-specific legal and factual queries.  See Cooper v. Southern Co., 390 F.3d 695, 722 (11th Cir. 2004).

Purporting to satisfy Rule 23(b)(3), Plaintiff merely recites the Rule's requirements in a cursory fashion and concludes that the proposed class meets those stringent requirements. Plaintiff's request for class certification must be denied for a lack of "extensive analysis" showing that no material variations in state law exist. While recognizing, correctly, that "variations in state law may swamp any common issues and defeat predominance," Plaintiff contends that class certification is possible if a claim is based on a general principal of law that is uniform among the states.  Pl. Br., p. 28.  However, this does not release Plaintiff from his obligation to extensively analyze the state law variations.

1.      **State Law Variations For Express Warranties Pose
        <u>Insuperable Barriers To Class Certification</u>**

To create an express warranty under U.C.C. § 2-313, an "affirmation of fact or promise" or a "description of the goods" by the seller must be a part of the "basis of the bargain." U.C.C. § 2-313. There is a split of authority among the states as to whether a buyer must show reliance on a statement or representation for it be considered part of the "basis of the bargain" and whether a purchaser may recover economic loss from a remote manufacturer when there is no privity of contract between the parties. <u>Id.</u>; <u>see also</u> <u>Cole</u>, 484 F.3d at 726-28.[4]

Further, although the statutory language creating an express warranty may be similar between the states, as the Plaintiff concedes, there are crucial differences regarding the actual application of the express warranty statutes, such as the requirement of reliance or privity, in order to establish a breach of express warranty. <u>See</u> Pl. Br., p. 32. Determining whether reliance

---

[4] The court in <u>Cole</u> noted:

> Some jurisdictions require a strict showing of reliance. <u>See</u>, <u>e.g.</u>, <u>Hendricks v. Callahan</u>, 972 F.2d 190, 193 (8th Cir. 1992) (applying Minnesota law); <u>Overstreet v. Norden Labs., Inc.</u>, 669 F.2d 1286, 1289-91 (6th Cir. 1982) (applying Kentucky law); <u>Speed Fastners, Inc., v. Newsom</u>, 382 F.2d 395, 397 (10th Cir. 1967) (applying Oklahoma law); <u>Hagenbuch v. Snap-On Tools Corp.</u>, 339 F. Supp. 676, 680 (D.N.H. 1972) (applying New Hampshire law); <u>Coryell v. Lombard Lincoln-Mercury Merkur, Inc.</u>, 189 Ill. App. 3d 163, 544 N.E.2d 1154, 1158, 136 Ill. Dec. 379 (Ill. App. Ct. 1989) (applying Illinois law). Other jurisdictions have no reliance requirement. <u>See</u>, <u>e.g.</u>, <u>Winston Indus., Inc. v. Stuyvesant Ins. Co.</u>, 55 Ala. App. 525, 317 So. 2d 493, 497 (Ala. Civ. App. 1975) (applying Alabama law); <u>Young & Cooper, Inc. v. Vestring</u>, 214 Kan. 311, 521 P.2d 281, 291 (Kan. 1974) (applying Kansas law); <u>Villalon v. Vollmering</u>, 676 S.W.2d 220, 222 & n.1 (Tex. App. 1984) (applying Texas law); <u>Interco Inc. v. Randustrial Corp.</u>, 533 S.W.2d 257, 261 (Mo. Ct. App. 1976) (applying Missouri law). And still other jurisdictions have applied a rebuttable presumption of reliance. <u>See</u>, <u>e.g.</u>, <u>Royal Bus. Machs., Inc. v. Lorraine Corp.</u>, 633 F.2d 34, 44 (7th Cir. 1980) (applying Indiana law); <u>Sessa v. Riegle</u>, 427 F. Supp. 760, 766 (E.D. Pa. 1977) (applying Pennsylvania law), aff'd 568 F.2d 770 (3d Cir. 1978).

484 F.3d at 726.

or privity exists requires inherently individualized inquiries that defeat the very purpose of class certification.[5]

## 2.        State Law Varies On The Requirement Of Reliance

Sidestepping any detailed analysis of the reliance requirements of state law, Plaintiff proposes that because "class member can prove reliance through common evidence of the warranties…the requirement of reliance does not render the claims by the members of the class unsuitable for class certification."  Pl. Br., p. 33.  Reliance is a required element of Plaintiff's claim of breach of express warranty and must be proven if Plaintiff is to prevail on the merits of his cause of action.  To the extent that Plaintiff attempts to expand Klay to permit a presumption of reliance, the Eleventh Circuit has expressly rejected such a presumption, holding that "reliance may not be presumed such that a plaintiff does not have to come forward and prove an element of the claim."  Sikes, 281 F.3d 1350; accord Andrews, 95 F.3d 1014.  As the Eleventh Circuit in Sikes stated, the purpose of a presumption is generally to benefit a party who does not have control of the evidence on an issue.  Sikes, 281 F.3d 1350.  Here, as in Andrews, defendants have offered no evidence regarding whether the putative class members "relied" upon misrepresentations.  The class members themselves are in control of this information. It would be unjust to employ a presumption to relieve a party of its burden of production when that party has all the evidence regarding that element of the claim.  Andrews, 95 F.3d 1014.

---

[5] The Klay court reasoned that "[w]here, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." Klay, 382 F.3d at 1255.  See also Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005) ("If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.").

In <u>Fisher v. Ciba Specialty Chemicals, Corp.</u>, as in the present case, the plaintiffs sought to avoid establishing proof of the element of reliance by citing to <u>Klay</u>.  <u>Fisher</u>, 238 F.R.D. 273 (S.D. Ala. 2006).  Specifically, plaintiffs argued that they should be able to prove reliance not on an individualized basis, but through a presumption that all class members relied to their detriment on Defendants' alleged misrepresentations concerning the existence and degree of the defect.  <u>Id.</u>  The <u>Fisher</u> court noted that the Eleventh Circuit expressly rejects such presumed reliance in a non-securities context.  <u>Id.</u> at 314; <u>see</u> <u>Sikes</u>, 281 F.3d at 1361 (concluding that district court erred in presuming reliance to certify Rule 23(b)(3) class for RICO claim predicated on mail and wire fraud); <u>Andrews,</u> 95 F.3d at 1024 (citing Eleventh Circuit authority for the proposition that "each plaintiff must demonstrate reliance on deceptive conduct in furtherance of the alleged RICO scheme"); <u>see</u> <u>also</u> <u>In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.</u>, 241 F.R.D. 305 (S.D. Ill. 2007) (rejecting Plaintiffs proposal concerning a classwide presumption of reliance).

Specifically, the facts in <u>Klay</u> were deemed distinguishable from "the type of 'presumed' reliance [the court] invalidated in <u>Sikes</u>," and the court found that individualized reliance issues did not predominate over common questions.  <u>Klay</u>, 382 F.3d at 1259.  By way of explanation, the <u>Klay</u> court stressed that unlike <u>Sikes</u> and <u>Andrews</u>, the misrepresentations at issue were the focal point of the parties' contractual arrangements, as they formed "the very consideration upon which those agreements are based," they "go to the heart of these agreements," and "doctors based their assent upon them."  <u>Id.</u>[6]

---

[6] Even though <u>Klay</u> granted class certification for plaintiffs' civil RICO claims, the Eleventh Circuit denied certification of the plaintiffs' state-law claims because individualized issues of law or fact predominated over common, class-wide issues.  Specifically, the court found that even if plaintiffs could prove that defendants had conspired against them and sometimes underpaid or delayed payments improperly, each plaintiff would still have to prove

Similarly, in the present matter, the issue of reliance boils down to a plaintiff-by-plaintiff assessment.   The claims of the purported class members will inevitably devolve into cumbersome, individual-specific inquiries about which representations by defendants were read by each plaintiff, whether and how each plaintiff relied on such representations, whether such reliance was reasonable given other information that may have been known by or reasonably available to that plaintiff, and whether and how that plaintiff was damaged as a result of any such reasonable reliance.  These inquiries are all necessarily individualized in scope.

Plaintiff also asserts that this is a case involving standardized misrepresentations, in that Taurus is alleged to have provided standardized written warranties.  As in Fisher, however, "this assertion does not help plaintiffs because the particular reliance problem that they confront is not that there was material variation in the alleged misrepresentations, but that there was material variation 'in the kinds or degrees of reliance by the persons to whom they were addressed.'" Fisher, 238 F.R.D. at 313 (quoting Advisory Notes to Rule 23(b)(3)).  In short, the existence of facts suggesting standardized representations by Defendants does not obviate the reliance obstacle to Rule 23(b)(3) certification if there were material differences in kinds or degrees of reliance by plaintiffs on such representations.  Id.

Plaintiff's "analysis" here consists of conclusory statements that the state law for express and implied warranty is practically identical.  Pl. Br., pp. 31, 37.  In support of its position, Plaintiff provided a survey of the states that only identifies whether the respective state adopted U.C.C. §§ 2-313 (express warranties) and 2-314 (implied warranties) and whether reliance and/or privity is required and includes statutory text and case notes.  See Pl. Br., Ex. 13-16.  This

independently, by facts specific to him, that his payments had been improperly reduced or delayed.  382 F.3d at 1268.   Klay held that "even though the plaintiffs' breach of contract claims involve some relatively simple common issues of law and possibly some common issues of fact, individualized issues of fact predominate."  Id. at 1267.

fails to satisfy Plaintiff's burden to undertake an extensive analysis in state law variations. In Cole, the plaintiffs' analysis relied primarily on textual similarities of each state's applicable law and on the general availability of legal protection in each jurisdiction for express and implied warranties.   Cole, 484 F.3d at 725.   There, the Fifth Circuit found that "[P]laintiffs' largely textual presentation of legal authority oversimplified the required analysis and glossed over the glaring substantive legal conflicts among the applicable laws of each jurisdiction."   Id. at 726. Here, Plaintiff falls victim to the same lack of proper analysis.

First, Plaintiff commits the same mistake as the plaintiffs in Cole by arguing that "there is no appreciable difference between the U.C.C. § 2-313 and § 2-314 and its analogous state statutes."  Pl. Br., p. 28.  Plaintiff relies on the U.C.C. as the uniform standard for state law on express and implied warranties while at the same time conceding that "[t]he Uniform Commercial Code is not uniform."  Pl. Br., p. 28; see also Walsh v. Ford Motor Co., 807 F.2d 1000, 1016 (D.C. Cir. 1986); In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig., 241 F.R.D. at 319 (finding that as enacted and judicially interpreted by states, the UCC is subject to important variations from state to state).  Additionally, as Plaintiff concedes, Louisiana has not adopted the U.C.C.  Pl. Br., p. 28.

Second, Plaintiff argues that even if there are differences in state law – a conclusion that Plaintiff cannot ignore – the class can be organized into "a small number of groups, each containing materially identical legal standards."   Id.  The use of subgroup or subclasses within the class is, among other deficiencies discussed herein, simply a device by Plaintiff to avoid an extensive analysis of state law on warranties that it knows reveals a substantial variation between states.  Having failed to conduct the required extensive analysis, class certification should be denied.

### 3.    State Law Variation on Privity For Express Warranty <u>Claims Precludes Class Certification</u>

As Plaintiff recognizes, many states require that there be privity between the contracting parties in order to recover damages for express warranty claims.  Pl. Br., p. 34.  Plaintiff seeks to create subgroups for the states that require privity by bringing those claims under 15 U.S.C. §§ 2301-12 (1982), the Magnuson-Moss Warranty Act.  <u>Id.</u>  The first deficiency in this argument is that Plaintiff only sought to add Magnuson-Moss claims to the Complaint simultaneously with the filing of the motion for class certification.  The motion to amend the Complaint has not been granted and it is Taurus's position that the Magnuson-Moss claim should be dismissed as Plaintiff failed to satisfy the jurisdictional requirements of the Magnuson-Moss Warranty Act.

Should the Court grant the motion to amend allowing the Magnuson-Moss claim, Plaintiff's proposed subclasses still fail because simply denoting an exception for certain states does not qualify as "extensive analysis" of the state law variations.  <u>Cole</u>, 484 F.3d at 728 (holding that plaintiff's expert failed to address the differences in state law of privity).

### 4.    <u>States Vary In Approach to Enforcing Written Warranties</u>

Plaintiff fails to consider how various states approach the terms of an express warranty, particularly whether certain terms and exclusive remedies are enforceable, as it is clear significant variations exist.  <u>See</u> Exhibit B.  States also vary in the standards that must be considered in determining whether consequential damages may be limited.  <u>See</u> Exhibit C. Plaintiff failed to address this issue, which will be required at trial, because the express warranties at issue preclude damages and provide for exclusive remedies.

### 5.    <u>There is No Proof of a Common Defect</u>

Given that each putative class member's claim for breach of express warranty and implied warranty of merchantability rests on the allegation that every Taurus Rifle is defective,

Plaintiff must proffer class-wide proof of a common defect.   Otherwise, the key threshold question of fact underlying all claims will be absent.  <u>Walsh</u>, 807 F.2d at 1018.   Thus, the threshold question is whether, taking all evidence relating to claims and defenses into account, Plaintiff's defect claim can be proven on a class-wide basis.  If not, class certification must be denied.  <u>See</u>, <u>e.g.</u>, <u>Murray v. Auslander</u>, 244 F.3d 807, 811 (11th Cir. 2001) ("[A] class action must involve issues that are susceptible of class-wide proof.").

The only evidence provided by Plaintiff of a class-wide defect is that less than 1% of all Taurus Rifles were defective.  Under these circumstances, the defect issue cannot be proved on a class-wide basis.  If only for this reason alone, certification is improper.

### 6.    Plaintiff Failed to Address State Law Variation <br> on Manifestation of Defect

Predominance under Rule 23(b)(3) is lacking because Plaintiff failed to address variation in state law regarding recovery for an unmanifested product defect.  Courts must scrutinize putative class actions seeking recovery for such claims, since the injuries alleged are often speculative or wholly hypothetical, as they are here, where Plaintiff has shown only that the vast majority of the members of this class never experienced any manifestation of the alleged defect (less than 1%), and where litigants often bring such claims simply as a means of avoiding the strict requirements of 23(b)(3).

In seeking the "loss of value of their rifles and future loss of use of their rifles," and asserting only breach of express and implied warranty (while abandoning the non-warranty claims), Plaintiff is advancing a theory of economic harm, based on contract theory, rather than tort theory.  In other words, Plaintiff's theory is that the class members did not receive what they paid for, or they have a diminished ability to re-sell the subject product should they decide to do so in the future.  However, Plaintiff is still bound by the reality that some jurisdictions require

that the alleged defect manifest itself regardless of whether the claim is brought under contract or tort.  Although the majority of courts reject class certifications based on unmanifested defect claims, the response to this theory is far from uniform.

For example, most jurisdictions do not permit the recovery of economic loss in product defect cases where the product has performed satisfactorily and has never manifested the alleged defect.  See, e.g., Briehl v. Gen. Motors Corp., 172 F.3d 623, 628 (8th Cir. 1999) (where there were 306 reports of inadvertent deployment out of approximately 224,000 GM automobiles); Hinton v. Monsanto Co., 813 So. 2d 827 (Ala. 2001); Jarman v. U. Indus. Corp., 98 F. Supp. 2d 757 (S.D. Miss. 2000); Weaver v. Chrysler Corp., 172 F.R.D. 96, 100 (S.D.N.Y. 1997) (dismissing warranty claim based on defective integrated child safety seats brought under New York law where plaintiff had experienced no problem with the child seat).  Likewise, the Fourth Circuit, looking specifically at recovery of diminished resale value, held that there is no recovery for breach of implied warranties under South Carolina law where a vehicle had never manifested the alleged defect.  Carlson v. Gen. Motors Corp., 883 F.2d 287, 297 (4th Cir. 1989).  Yet this is not the law in all jurisdictions.  For example, some jurisdictions do not require the actual manifestation of a vehicle defect as a common prerequisite for recovery under warranty law.  See In re Bridgestone/Firestone, Inc., 155 F. Supp. 2d 1069, 1099-1101 (S.D. Ind. 2001) (holding that manifestation of defect is not required under Tennessee and Michigan law for recovery under express and implied warranty theories), rev'd on other grounds, 288 F.3d 1012 (7th Cir. 2002); see also In re Bridgestone/Firestone, Inc., 288 F.3d at 1017 (contemplating that it is not clear whether bringing a defect based claim under contract law rather than tort avoids the requirement that the product defect manifest itself but commenting that "most states would not entertain" recovery under a warranty theory where plaintiffs' product had not failed).

Such variations, which are likely to preclude recovery for some class members, further show that Plaintiff fails to carry his burden of showing that common issues of law predominate under Rule 23(b)(3).  Such was the result in <u>Cole</u>.  Moreover, those putative class members who are concerned about any future manifestation of defect are already protected by Taurus's lifetime warranty, which guarantees refund, replacement, or repair of their rifles.  In short, there is no compelling reason for the Court to allow putative class members to recover damages for injuries which they have not yet suffered and for a speculative defect that may never materialize.

In addition to the predominance inquiry, Rule 23(a) requirements are also affected where, as here, the named plaintiff claims to have suffered an injury but seeks to use the class action device to prosecute the action on behalf of both injured putative class members and no-injury putative class members.  For example, adequacy of representation and typicality are arguably lacking where the named plaintiff's injuries are different from those of the putative class members (who have suffered no injuries).   In <u>Martin v. Am. Med. Sys., Inc.</u>, as in the present case, although the proposed class did not distinguish between putative members who had or had not suffered any injury, the lead plaintiff himself claimed he had suffered injury. <u>Martin</u>, IP 94-2067-C-H/G, 1995 WL 680630, at *1-2 (S.D. Ind. Oct. 25, 1995).  When the plaintiff moved for class certification, the court denied the motion on a number of grounds, including (1) the injured lead plaintiff could not adequately represent the interests of the proposed class members who had not experienced any problems with their implants, and (2) the injured lead plaintiff's claims were not typical of those of no-injury implant patients.

The court further noted that even if the proposed class were narrowed to include only those implant recipients who had experienced problems, the plaintiff still could not establish the additional requirements that common issues predominate over individual issues, and that a class

action is superior to other methods for resolving such claims.  Id. at *7-10.  With respect to the latter, the court stated, "It is not clear that satisfied recipients of ... implants even could bring suit to obtain relief. Any plaintiff bringing his own suit would need to allege injury for proper standing to bring suit.  Such an injury would have to be 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'"  Id. at *6 (internal citations omitted); see also McElhaney v. Eli Lilly & Co., 93 FRD 875, 878 (D.S.D. 1982) ("The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf.  Each class member must have standing to bring the suit in his own right . . . .  Since many individuals included in the purported class have sustained no injury in fact, they would lack standing to bring suit in their own right." (internal citations omitted)).

> **B.     Plaintiff Failed to Address State Law Variations for Implied Warranties of Merchantability That Pose Insuperable Barriers To Class Certification**

Plaintiff also seeks class certification on his claim for breach of the implied warranty of merchantability.  Contrary to yet another conclusory statement by Plaintiff, implied warranty laws are not "nearly identical among the states" and, as such, analysis of those claims on a classwide basis requires analysis of each state's definition of merchantability, consideration of whether the state views the claim as a contract or tort, and the threshold issue of whether the warranty can be waived.  See In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 194 F.R.D. 484, 489 (D.N.J. 2000) (denying class action status on plaintiffs' claim for implied warranty of merchantability because of discrepancies among the states' laws.).

> **1.     State Law Varies On The Requirement of Privity for Implied Warranty of Merchantability**

Plaintiff concedes that the application of the implied warranty of merchantability varies among states in its application.  Pl. Br., p.37; see also Exhibit D.  Plaintiff proposes to break the

states into subgroups that include states that do not require privity of contract to recover for the breach of implied warranty of merchantability where only economic damages are involved.  The remaining states that do require privity would be grouped into additional subgroups based on exceptions found in state law, adding to the unmanageable subgroups.  Plaintiff's attempts to ignore the state variations on implied warranty of merchantability by arguing that class members liability issues can be determined on a common basis must fail.

Plaintiff's approach divides the privity issue into one of states that require privity and those that do not.  However, as one leading treatise has stated:

> [P]rivity is a sturdy fortress which is not being dismantled in a uniform way or at a uniform pace.  Some states have generally abrogated the privity defenses either by legislation or judicial decision in other jurisdictions, however, the legislators and the courts have instead carved diverse exceptions to the privity defenses producing a very intricate laws of privity.

3 J. MCDONNEL AND COLEMAN COMMERCIAL AND CONSUMER WARRANTIES §24.01[1] at 24-3 (1987)

As the Fifth Circuit recently noted, "the state law variations are important, in part because they would require separate jury instructions."  Cole, 484 F.3d at 728.  Additionally, in those states that have a strict privity requirement, each class member would be required to prove individually that he purchased his Taurus Rifle from Taurus or its agent, as opposed to an independent dealer or another individual.  Id.

The privity of contract inquiry would turn on facts particular to each class member and thus would require individualized hearings.  Id.  Other courts have declined class certification because of the state variations or privity of contract.  Id. (citing Chin v. Chrysler Corp., 182 F.R.D. 443, 460 (D.N.J. 1998) (noting that plaintiffs filed to show that state law differences regarding vertical privity did not pose manageability problems)); Walsh v. Ford Motor Co., 130

F.R.D. 260, 272 (D.D.C. 1990) ("Along with the various implied warranty standards and other subsidiary issues . . . the numerous vertical privity rules convince this Court that a predominance of common issues are not present in this case.").

2.      **Plaintiff Failed to Address the State Law Variations on the Presumption of Merchantability**

Plaintiff also ignores state variations on the issue of the presumption of merchantability. It can be assumed that some, if not many, of the putative class members have used their Taurus Rifle for years without any difficulties.  Indeed, out of a possible 13,518 Taurus Rifles that have been distributed, Plaintiff found evidence of incidents in less than 1% of Taurus Rifles distributed.  In certain states, prolonged use without incident entitles Taurus to a presumption that its products are merchantable and free from defects.  For example, both Mississippi and North Carolina provide for a presumption of merchantability.  See Ford Motor Co. v. Fairley, 398 So. 2d 216, 219 (Miss. 1991); Cooper v. Mason, 188 S.E.2d 653, 655 (N.C. Ct. App. 1972). Other states have similar laws or standards as set forth on Exhibit E.  Accordingly, to properly instruct the jury, the Court would have to analyze each state's laws concerning any such presumption and then determine the availability of such a presumption by consideration of evidence of each plaintiff's use of the Taurus Rifle.  Such an individualized process does not support class certification.

3.      **Taurus Rifles are Fit for the Ordinary Purposes for Which They are Used**

Plaintiff offered little evidence that the Taurus Rifles are not fit for their ordinary purpose.  As stated above, only a fraction of Taurus Rifles malfunctioned hence the rifles are "merchantable" under U.C.C. § 2-314, and no cause of action for breach of implied warranty can arise.  If the majority of the putative class members have no claim against Taurus, a reasonable

position based on the *de minimis* record of alleged incidents, then the class action is really comprised of, at best, individual claims.  The existence of only individual claims is fatal to a showing of predominance of common questions.  See Feinstein, 535 F. Supp. 595 (holding that evidence that majority of Firestone tires were fit for their ordinary purpose defeats class certification under U.C.C. § 2-314); In re Canon Cameras Litig., 237 F.R.D. 357, 359 (S.D.N.Y. 2006) (denying class certification under implied warranty of merchantability where evidence showed that only a tiny fraction of cameras at issue malfunctioned for any reason).

>    **4.      Plaintiff's Alternative Analysis of Consumer Protection
>             Laws Does Not Satisfy Predominance Under Rule 23(b)(3)**

Plaintiff also offers up state consumer fraud statutes, as an alternative to the warranty claims in several of the states requiring privity for enforcement of implied or express warranty claims.[7]  He proposes that the consumer fraud statutes of the various states may be divided into two subclasses based on the requirement of scienter.  Scienter is not the only issue that raises variation in state law.  In Tylka v. Gerber Products Co., the court rejected a plaintiff's similar attempts to group consumer fraud acts into four subclasses as "overly simplistic in light of the nuances and differences presented by the consumer fraud acts."  Tylka, 178 F.R.D. 493, 498 (N.D. Ill. 1998).  The Tylka court went on to explain that "brief review of the applicable statutes reveals not only nuances, but differing standards of proof, procedure, substance, and remedies." Id.  Similarly, in Carpenter v. BMW of North America, Inc., the court rejected the plaintiff's attempt to group all fifty consumer protection laws into three categories.  Carpenter, No. 99-CV-

---

[7] Although Plaintiff references twelve states which require privity for enforcement of implied warranty claims, he ignores three of the twelve in his "survey of consumer protection laws": Alabama, Arizona, and California.  Notably, Alabama does not allow the use of class actions by private litigants and California requires written notice prior to the filing of a lawsuit under its consumer protection statute, as well as, limiting consumer fraud claims to a three year statute of limitations.  Arizona limits the time within which a private citizen may bring an action for a violation of the Consumer Fraud Act to one year from the date the claim arises.

214, 1999 WL 415390 (E.D. Pa. June 21, 1999) (explaining that while "[p]laintiff concludes, based on her division into the above [3] groups, that consumer fraud laws 'can easily be divided into subclasses and cha[r]ged to the jury'…[s]uch a proffer…is 'overly simplistic.') (quoting Tylka, 178 F.R.D at 498.)

As these cases illustrate, state consumer protection statutes vary on a range of fundamental issues. See also JOHN S. KIERNAN, ET AL., DEVELOPMENTS IN CONSUMER FRAUD CLASS ACTION LAW, PLI/PAT 237, 277 (1998). For example, the issues of what constitutes actionable conduct, the level of scienter required, whether reliance is required, which party carries the burden of proof, availability of different kinds of damages, and even whether class action is permitted at all, vary considerably across the states. Accordingly, these variations have led to the "almost universal reluctance to certify such class actions." Id.

Plaintiff fails to provide the requisite detailed analysis of the state consumer protection acts he relies on. Aside from his omission of any analysis of Alabama, Arizona, and California, his "survey of consumer protection laws" falls short also because of his cursory treatment of the differing laws between the states he does reference. Specifically, he merely categorizes some of the possible bases for variation, without offering meaningful analysis of how concepts such as reliance or scienter, the applicable statutes of limitations, or language such as "[u]nfair, false, misleading, or deceptive acts or practices" are defined or applied in each state. In Castano, the Fifth Circuit found that the insufficient analysis offered by plaintiff was reason to deny certification. 84 F.3d at 743 ("The district court's consideration of state law variations was inadequate. The surveys provided by the plaintiffs failed to discuss, in any meaningful way, how the court could deal with variations in state law."). See also Lyon v. Caterpillar, Inc., 194 F.R.D. 206 (E.D. Pa. 2000) (holding that individual states' consumer protection statutes could not be

divided into four subclasses to minimize legal divergence). Plaintiff's alternative analysis of state consumer protection laws fails to meet his burden of proving that state law variations do not defeat predominance, another basis for denying class certification.

Moreover, consumer fraud statues are based in part on common law fraud, and in particular the species of fraud known as fraudulent concealment. Plaintiff fails to address the wide variation that exists in both fraud and fraudulent concealment claims. See Exhibit F and Exhibit G.

### C.  Taurus' Affirmative Defenses Vary According to State

Plaintiff also ignores the affirmative defenses, and their state variations, that Taurus may assert against claims by the putative class members. Each possible affirmative defense will require a factual inquiry for each Taurus Rifle owner. For example, there are several variations on the "sophisticated user defense" recognized by state law. Those states adopting the "Duty Approach" hold that a seller or manufacturer has no duty to warn the end user when the intermediaries are sophisticated, knowledgeable and aware of the risks. See Exhibit H. Other states determine the applicability of the sophisticated user defense based on the numerous factors listed in RESTATEMENT (SECOND) OF TORTS § 388. Id. Yet others, like Connecticut, have passed a specific statute that sets forth a fact-specific balancing test. Id.

States also differ as to whether they recognize the "heeding presumption," which creates a rebuttable presumption that a plaintiff would have followed an adequate warning had one been provided. See Norwood v. Raytheon Co., 237 F.R.D. 581, 599 (W.D. Tex. 2006). Not all states recognize the heeding presumption. Id. In those states that do, the burdens of production and persuasion are shifted to defendants, while in other states only the burden of production is shifted to defendants. Id.; see also Exhibit I.

Some states also recognize a "state of the art" defense, which applies when no safer alternative design existed for the product at the time the product was built, designed or sold. Norwood, 237 F.R.D. at 600.  Those states that do recognize this defense differ as to the time at which the applicable state of the art is determined.  Id.; see also Exhibit J.  States also vary widely on contributory and comparative negligence rules, which may apply at trial.  See Exhibit K.

Furthermore, statutes of limitation vary amongst states.  For instance, Georgia allows an express warranty, by its terms, to impose a one-year limitation period to a claim for breach of an express warranty, instead of the standard four years.  O.C.G.A. § 11-2-725(1).  South Carolina applies a six-year statute of limitation.  S.C. CODE ANN. § 36-2-725(1).  Plaintiff fails to consider that most of the proposed warranty claims are barred by various statutes of limitation.

Plaintiff also fails to address how variations regarding punitive damages will be handled, which can only mean that Plaintiff has abandoned his class claim for such relief.  It is not surprising that Plaintiff abandoned such relief because states vary widely in approach to punitive damages, and various monetary caps and defenses exist for each state.  See Exhibit L.

### D. Plaintiff Cannot Use Subgroups to Defeat the Requirements of Rule 23(a) and (b)

Plaintiff's solution to the obvious conflicts of law amongst the different states is to group "issues together, and carefully craft jury instructions and verdict forms, etc. in a manner designed to eliminate any unmanageability." Pl. Br., p. 31.   In short, Plaintiff proposes an unruly number of subgroups to address the variations in state law.  Rule 23(c)(5) provides that "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Id.  However, each proposed subclass must independently satisfy the requirements of Rule 23 for the maintenance of a class action.  Id.; see London v. Wal-Mart Stores, 340 F.3d 1246,

1253 (11th Cir. 2003);  Johnson v. Am. Credit Co. of Georgia, 581 F.2d 526 (5th Cir.  1978);

Jones v. Roy, 202 F.R.D. 658, 662 (M.D. Ala. 2001); Betts v. Reliable Collection Agency, 659

F.2d 1000, 1005 (9th Cir. 1981) ("As a practical matter, the litigation as to each subclass is

treated as a separate law suit."); 1 NEWBERG ON CLASS ACTIONS § 3:9 (4th ed. 2006).  If the

party seeking class certification fails to demonstrate any single requirement, then certification

must be denied.  Jones, 202 F.R.D. at 662; Agan v. Katzma & Korr P.A., 222 F.R.D. 692 (S.D.

Fla. 2004).

     Because subclassing is often invoked by plaintiffs seeking to relieve their burden on

multi-state class certification, it should be used wisely.  As the Eleventh Circuit in Klay stated,

"[i]n such a case, of course, a court must be careful not to certify too many groups.  'If more than

a few of the laws of the fifty-one  states differ, the district judge would face an impossible task of

instructing a jury on the relevant law, yet another reason why class certification should not be the

appropriate course of action.'"  Klay, 382 F.3d at 1262 (quoting  In re Am. Med. Sys., 75 F.3d

1069, 1085 (6th Cir. 1996).  Moreover, subclassing may be an inherently limited tool in class

action management:

> … If the individual class members need to prove an issue
> individually – reliance, for example – subclassing does not change
> that.  Even if the court could sort the class members into groups
> based on various theories of reliance, each class member in each
> group would still need to present individualized proof of reliance.
> Indeed, for truly individual issues, subclassing provides no help
> because each sub-class – properly defined as to that issue – would
> consist of a single class member … Moreover, extensive
> subclassing can create manageability problems that undermine the
> superiority requirement.

SS Gensler, at 321-322 (emphasis added).

     The creation of approximately twenty subgroups does not satisfy Plaintiff's obligation to

confront and analyze the variations in state law.  Subclassing was never meant to be a device by

which plaintiffs could sidestep their burdens on class certification. Each of Plaintiff's approximately twenty proposed subclasses must independently meet the burdens of the Rule 23(a) and Rule 23(b) requirements, and establish different proofs at trial, including the endless parsing of individualized issues of reliance. Plaintiffs, however, provide the Court with no specific analysis of the various state law variations, nor any analysis of the impact of the analysis of individual issues within each subclass, at trial. Plaintiff's complete failure to meaningfully address the choice of law issues in any way warrants denial of Plaintiff's motion. <u>Castano</u>, 84 F.3d at 740-741.

> ### E.    **<u>Plaintiff Failed to Address The U.C.C.'s Notice Requirement</u>**

Plaintiff fails to address the requirement of notice under the U.C.C., specifically § 2-607(3)(2) that requires consumers wishing to bring a breach of warranty claim to notify the seller of an alleged breach "within a reasonable time." U.C.C. § 2-607(3)(b). This provision has been interpreted to mean that each plaintiff must provide proof of pre-suit notice of the alleged breach of warranty. <u>See</u> <u>e.g.</u>, <u>Eastern Air Lines, Inc. v. McDonnell Douglas Corp.</u>, 532 F.2d 957, 970 n.31 (5th Cir. 1976). State law varies on what constitutes reasonable notice and the identity of the party to whom notice should be given. <u>Compare</u> <u>Palmer v. A.H. Robins Co.</u>, 684 P.2d 197 (Colo. 1984) (notification of intermediate seller will suffice); <u>Firestone Tire & Rubber Co. v. Cannon</u>, 452 A.2d 192 (Md. App. 1982) (need notify immediate seller only); <u>with</u> <u>Parker v. Bell Ford, Inc.</u>, 425 So.2d 1101 (Ala. 1983) (must notify manufacturer). Other courts that have examined the issue of notice under U.C.C. § 2-607(3)(2) in the class certification context have found that these variations impact predominance. <u>Cole</u>, 484 F.3d at 727 (citations omitted). Plaintiff's failure to adequately analyze (much less discuss) the notice requirements supports denial of class certification.

**F.      Plaintiffs' Proposed Class Does Not Meet The
          "Superiority" Requirement of Rule 23(b)(3)**

Rule 23(b)(3) also requires that, before certifying the class, the court find "that a class
action is superior to other available methods for the fair and efficient adjudication of the
controversy."  Factors the Court should consider in making this determination include: (A) the
interest of members of the class in individually controlling the prosecution or defense of separate
actions;  (B) the  extent  and  nature  of  any  litigation  concerning  the  controversy  already
commenced  by  or  against  members  of  the  class;  (C) the  desirability  or  undesirability  of
concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to
be encountered in the management of a class action.  Id.; see also FED. R. CIV. P. 23 Advisory
Committee Notes (1966 Amendments), reprinted at 39 F.R.D. 69, 103-04 (1966) (factors are
listed "non-exhaustively").  An analysis of these factors reveals that the class action comprised
of 20 subclasses proposed by Plaintiff is not superior to other methods for the adjudication of the
purported class members' claims.  On the contrary, it would produce an unmanageable morass
that would devolve into individual adjudications for each subclass and would still leave the bulk
of each purported class member's claim unresolved.

Modern jurisprudence requires a plaintiff to present a nuts-and-bolts plan, so the trial
court (and court of appeal) can determine whether that plan presents a superior vehicle for
resolution of the dispute as required by Rule 23(b)(3).  Failure to describe such a plan in a class-
certification order present ground for reversal.  Robinson v. Tex. Auto Dealers Assoc., 387 F.3d
416, 426 (5th Cir. 2004).

> "[I]t is improper to certify a class without knowing how the claims
> can and will likely be tried.  See Castano v. American Tobacco
> Co., 84 F.3d 734, 744 (5th Cir. 1996).  A trial court's certification
> order must indicate how the claims will likely be tried so that

> conformance with [the class certification rule] may be meaningfully evaluated."

Sw. Ref. Co. v. Bernal, 22 S.W. 3d 425, 435 (Tex. 2000).  Merely proposing twenty subclasses is not a feasible nuts-and-bolts plan.

### 1.   Substantial Difficulties are Likely to be Encountered In the Management of the Proposed Class Action

Manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular case."  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 164 (1974).  Among the most common manageability problems, all of which are present here, are conflicts of law, substantial individual issues that require adjudication within the context of the subclasses, and lack of a plan to deal effectively with the claims at trial.  See, e.g., Castano, 84 F.3d at 741; In re Propulsid Prods. Liab. Litig., 208 F.R.D. 133, 147 (E.D. La. 2002);  Spence, 227 F.3d at 313; Allison v. Citgo Petroleum Corp., 151 F.3d 402, 420 n.15 (5th Cir. 1998).

First, the conflicts of laws issues would be among the most difficult for this Court to manage, if they could be managed at all.  Other courts have found that when the laws of numerous jurisdictions must be applied, the class action format is unmanageable.  See, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 822 (1985); Castano, 84 F.3d at 749-50; In re Bridgestone/Firestone, 288 F.3d at 1018; Am. Med. Sys., Inc., 75 F.3d at 1085.

Finally, class proponents must offer a trial plan to address whether, for example, proofs presented during one phase of the class action trial will need to be presented again during subsequent individual trials, resulting in duplicated effort.  See, e.g., Castano, 84 F.3d at 749 ("It may be that comparative negligence will be raised in the individual trials, and the evidence presented at the class trial will have to be repeated . . . .  The net result may be a waste, not a

savings, in judicial resources").   Here, Plaintiff has not even attempted to explain how the proposed class actions can be managed at trial.  For example, Plaintiff has not submitted any sample jury instructions or verdict forms necessary to demonstrate the workability of what he proposes.

Furthermore, Plaintiff fails to realistically propose how damages will be calculated at trial; instead Plaintiff contemplates a complete refund, ignoring that potential class member have used their Taurus Rifles.  Plaintiff presented no plan for determining the fair market value of each Taurus Rifle that might be subject to return, which is required under state law.  See Ellison v. Heritage Dodge, 320 S.E.2d 716, 718-19 (S.C. Ct. App. 1984) (affirming involuntary nonsuit in warranty action where plaintiff failed to prove the fair market value of a van in its defective condition.)  Plaintiff merely assumes that the entire retail price should be refunded.

### 2.     Plaintiff's Support for Establishment of a Nationwide Class is Distinguishable

Contrary to Plaintiff's assertion that "nationwide class actions can be, and are, maintained in many instances," the majority of courts have rejected application of a uniform standard to nationwide classes, noting that "numerous variations exist among states' laws concerning the scope and application of…warranty claims."     Walsh, 130 F.R.D. at 271; In re Bridgestone/Firestone, Inc., 288 F.3d at 1018-21 (decertifying a nationwide class action alleging, inter alia, claims for breach of  express and implied warranties); Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 674 (7th Cir. 2001) (recognizing that a "nationwide class in what is fundamentally a breach-of-warranty action, coupled with a claim of fraud, poses serious problems about the choice of law, the manageability of the suit, and thus the propriety of class certification"); Cole, 484 F.3d 717; Schein v. Stromboe, D.D.S., 102 S.W.3d 675 (Tex. 2002) (citations omitted).

Plaintiff's support for establishment of a nationwide class action based on the same breach of warranty claims is inapplicable.  For example, Allapattah Services, Inc. v. Exxon Corp., 188 F.R.D. 667 (S.D. Fla. 1999), is not a breach of warranty case.  Moreover, in Allapattah, plaintiffs were Exxon dealers who alleged that Exxon beached their respective wholesale agreements by overcharging them for gasoline.  See id. at 675, n.14.

Further, Plaintiff uses the example of actions brought for breach of contract.  However, Kleiner v. First National Bank of Atlanta, 97 F.R.D. 683 (N.D. Ga. 1983), cited by Plaintiff, states that "the Court has examined the common law of contracts of the states possibly involved, and is convinced that there are no material differences that would affect interpretation of the agreements *at issue*."  Id. at 694 n.13 (emphasis added).  Kleiner dealt specifically with the interpretation of the terms of a form loan contract with potential applicable state law issues in five states.  The Court, in that case, determined that class certification was appropriate as "the general policies underlying common law rules of contract interpretation tend to be uniform."  Id. Despite the contention of Plaintiff to the contrary, such is not the case in the present action. Here, states' warranty laws differ as to what is required to prove the existence of a warranty and breach thereof.

In Singer v. Am. Tel. & Tel. Corp., 185 F.R.D. 681 (S.D. Fla. 1998), the plaintiff sought to certify a class based on claims of breach of contract for AT&T's alleged double billing for the lease of their "key equipment."  In that case, the Court found that AT&T had not demonstrated that, pursuant to the choice of law rules, the laws of fifty states would have to be applied.  Id. at 691.  Further, the Court determined that AT&T had failed to show that the state claims at issue were "materially different under each state's law."  Id. at 692.  Similar to the court's determination in Kleiner, the Florida District Court stated in Singer that claims for breach of

contract "are universally recognized causes of action that are materially the same throughout the United States." Id. However, as with Kleiner, contrary to the contention of Plaintiff in the present matter, this finding is irrelevant as to the appropriateness of certifying a nationwide class based on warranty theories.

## V.    PLAINTIFF'S CLASS ALLEGATIONS PURSUANT TO RULE 23(B)(2) SHOULD BE DISMISSED

Plaintiff also seeks to certify this class action pursuant to Federal Rule of Civil Procedure 23(b)(2). Plaintiff, however, cannot maintain a class action under Rule 23(b)(2) because the predominant relief he seeks is monetary, not injunctive. See Pl. Br., p. 1 ("Certification is particularly appropriate in this case because the overarching issues presented by Plaintiff's claims define the rights of members of the classes to be…compensated for Defendants' breaches of express and implied warranties to members of the classes.") Under Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Because Rule 23(b)(2) relates to equitable relief, this rule is not the proper vehicle where a plaintiff seeks monetary damages. Id. Moreover, Rule 23(b)(2) was intended primarily to facilitate civil rights class actions where class representatives typically sought brought injunctive or declaratory relief against discriminatory practices. See Advisory Committee Notes, 39 F.R.D. 98, 102 (1966). See generally, Note, Antidiscrimination Class Actions Under the Federal Rules of Civil Procedure: The Transformation of Rule 23(B)(2), 88 YALE L.J. 868, 873 (1979); FED. R. CIV. P. 23, 23(b)(2); Penson v. Terminal Transport Co., Inc., 634 F.2d 989 (5th Cir. 1981).

Thus, certification under Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." Zehel-Miller v.

Astrazenaca Pharms., LP, 223 F.R.D. 659, 663 (M.D. Fla. 2004); Murray v. Auslander, 244 F.3d 807, 812 (11th Cir. 2001); Allison, 151 F.3d at 411. Where the purported class seeks both equitable and monetary relief, the court must determine which relief is central to the claims. Id. In such instances, "monetary relief predominates in (b)(2) class actions unless it is *incidental* to the requested injunctive or declaratory relief." Murray, 244 F.3d at 812 (emphasis in original); see also Zehel-Miller, 223 F.R.D. at 663 (certification denied because compensatory and punitive claims could not be considered "incidental" to the equitable relief sought); Hammet v. Am. Bankers Ins. Co. of Fla., 203 F.R.D. 690, 695-96 (S.D. Fla. 2001) (finding certification not warranted where notwithstanding a request for injunctive or declaratory relief, the predominant relief requested is monetary). Finally, where the plaintiff and class simply seek a refund of the purchase price of an alleged defective product, the "refund class" cannot be certified under Rule 23(b)(2) because its central aim is the recovery of monetary damages. See Zehel-Miller, 223 F.R.D. at 663.

Although Alligood seeks both equitable and compensatory relief, Alligood's claim for compensatory relief predominates. Specifically, Alligood's request for equitable relief is simply that Taurus issue a warning to all class members advising of the danger of cartridge case failures and for Taurus to cease manufacturing rifles with inadequate or defective pressure containing features. Alligood's request for monetary damages is the value of the loss of use of the rifles and cartridges, exemplary damages and attorneys' fees. Complaint ¶¶ 13.1, 13.3. Because Alligood's request for monetary damages is for the loss of use of the rifles and cartridges, Alligood seeks a refund class. As such, the central aim of Alligood's complaint is the recovery of monetary damages. See Zehel-Miller, 223 F.R.D. at 663. Because Alligood's compensatory

and exemplary damages are not incidental to his request for equitable relief but instead predominate, Alligood's class allegations pursuant to Rule 23(b)(2) must fail.

In addition, even if the Court found that the compensatory and exemplary damages sought are incidental to the equitable relief sought, certification under Rule 23(b)(2) is still improper because the class claims lack cohesion. Although Rule 23(b)(2) contains no predominance or superiority requirements, class claims thereunder still must be cohesive. Barnes, 161 F.3d at 143 (3d Cir. 1998). In fact, because "unnamed members are bound by the action without the opportunity to opt out" of a Rule 23(b)(2) class, even greater cohesiveness generally is required than in a Rule 23(b)(3) class. Id. at 142-43.

The court in Holmes v. Cont'l Can Co. emphasized the distinction between a Rule 23(b)(2) class and a (b)(3) class as, "[a]t base, the (b)(2) class is distinguished from the (b)(3) class by class cohesiveness . . . . Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries. The members of a (b)(2) class are generally bound together through 'preexisting or continuing legal relationships' or by some significant common trait such as race or gender." 706 F.2d 1144, 1155 n.8 (11th Cir. 1983) (citation and quotation omitted). The putative class members here are not bound in such compelling ways. Because a Rule 23(b)(2) class requires "even greater cohesiveness" than a Rule 23(b)(3) class, and because Plaintiff fails to satisfy even the Rule 23(b)(3) requirements of predominance and superiority, class certification under Rule 23(b)(2) is particularly inappropriate and must fail.

## CONCLUSION

Plaintiff's submission completely fails to demonstrate that this case is appropriate for class certification. There are irreconcilable differences in state law standards for express and implied warranties. The certification of a class containing subgroups created to defeat the

predominance requirement of Rule 23(b) is improper and would only create an unmanageable class action.   Under the universally recognized standards for class certification, it is clear that Plaintiff's warranty claims cannot be tried as a class action.

Respectfully submitted,

*s/ Troy Marsh*
Troy Marsh
Georgia Bar No. 471440
Troy Marsh, P.C.
P.O. Box 1897
226 S. Zetterower Avenue
Statesboro, Georgia 30459
Telephone: (912) 764-7388

| | |
|---|---|
| Timothy A. Bumann | David R. Gross |
| Georgia Bar No. 094535 | David A. Cohen |
| Wm. Parker Sanders | Colin R. Robinson |
| Georgia Bar No. 626020 | (all admitted *pro hac vice*) |
| Smith, Gambrell & Russell, LLP | Saiber Schlesinger Satz & Goldstein |
| Promenade II, Suite 3100 | One Gateway Center, 13th Floor |
| 1230 Peachtree Street, N.E. | Newark, New Jersey 07102-5311 |
| Atlanta, GA  30309 | Telephone: (973) 622-3333 |
| (404) 815-3500 | Facsimile:  (973) 622-3349 |

*Counsel for Defendants*
*Taurus International Manufacturing,*
*Inc. and Forjas Taurus, S.A.*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
Dublin Division

| | | |
|---|---|---|
| JAMES ALLIGOOD, individually and on behalf of all others similarly situated, | ) ) ) | Civil Action No.: CV306-003 |
| | ) | |
| Plaintiff, | ) | Jury Trial Demanded |
| | ) | |
| vs. | ) | |
| | ) | |
| TAURUS INTERNATIONAL MANUFACTURING, INC., a Florida Corporation; Forjas Taurus, S.A., a Brazil Corporation, AMMUNITION ACCESSORIES, INC., a Delaware Corporation, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I certify that this day I served the following counsel with a true and correct copy of *Taurus International Manufacturing, Inc.'s and Forjas Taurus, S.A.'s Opposition to Motion for Class Certification* by depositing the same in the U.S. Mail, with proper postage affixed thereto and addressed as follows:

| | |
|---|---|
| Eve A. Applebaum<br>Todd C. Passman<br>Applebaum & Associates, P.C.<br>225 Peachtree Street, Suite 500, South Tower<br>Atlanta, Georgia  30303-1701 | John Ayoub<br>John George Mansour<br>Ayoub & Mansour, LLC<br>675 Seminole Ave., #301<br>Atlanta, Georgia  30307 |
| Robert T. Kugler<br>Doug Boettge<br>Leonard, Street and Deinard, P.A.<br>150 South Fifth St., Suite 2300<br>Minneapolis, MN  55402 | Gerald Edenfield<br>Sharon Edenfield<br>Edenfield, Cox, Bruce & Classens, P.C.<br>115 Savannah Ave.<br>P.O. Box. 1700<br>Statesboro, GA  30459 |

[SIGNATURE ON NEXT PAGE]

1

Respectfully submitted this 11th day of January 2008.

*/s/ Troy Marsh*
Troy Marsh